## TOWN OF WESTON v. TOWN OF LANDGROVE.

*Pauper.* *Gen. Sts. c.* 19, *s.* 1. *Bond for Deed.*

1. Under Gen. Sts. c. 19, s. 1, sub. div. 4, (R. L. c. 135), when one has purchased and occupied a farm, though he holds it by a bond, conditioned that he shall have a deed thereof on the payment of the sums specified in it, he holds such farm "in his own right" within the provisions of the pauper law. The bond, in effect, is the same as a deed with a mortgage back.

2. Under the said section of the statute, the illegality of the list, used and adopted by the town, will not prevent one gaining a settlement, if he pays the requisite tax.

THIS case was tried by the court, at the December Term, 1879, BARRETT, J., presiding. The court held that the settlement was in Landgrove. It was an appeal by the town from an order of removal of one Sidney L. Holt and family from the town of Weston. Plea, that the last legal settlement of the said Holt was not in the town of Landgrove. The facts are sufficiently stated in the opinion of the court, except the following : In August, 1862, the said Sidney enlisted into the U. S. military service for nine months, with the consent of his father, with the understanding that his father was to have his wages. He returned in May, 1863 ; and lived with

his father's family till December, 1863, when he again, and his father, enlisted into the U. S. military service for three years. During their service, the father received the State pay for both. Said Sidney returned in November, 1865, and lived in his father's family till he was twenty-one years old. The father, Nathan Holt, returned from the army in June, 1865. He sold the farm back to Abbott in April, 1864, and received on said sale in money $1100. He paid all the taxes on the farm up to the time the bond was discharged; and complied with all the provisions of the bond. The said Nathan, in November, 1865, with his own and son's money, purchased a farm in Weston. They lived on this farm till April, 1867, when said Nathan bought out said Sidney and paid him $450. The said Sidney was born in 1845. It appeared that the grand list of Landgrove for the years 1857–8–9, was not signed nor sworn to, by the listers. It was conceded that the only settlement said Sidney had he derived from his father.

*Walker & Goddard*, for the plaintiff.

It is now well settled in this State, that any person holds real estate " in his own right " within the meaning of the statute, when he has a right therein which he can assert and enforce in courts of law or equity. *Newfane* v. *Somerset*, 49 Vt. 411.

The title of a person in possession under a contract of purchase is like that of a mortgagor. 22 Wend. 605 ; 7 Barb. 74. His interest is attachable ; but could not be if he did not hold in his own right. 14 Vt. 527 ; 9 Ib. 326 ; 17 Ib. 280 ; 18 Johns. 94. He has a homestead interest in the realty that may be carved out. 41 Vt. 398 ; 46 Vt. 485.

If emancipation is by instrument in writing, it must be signed by the minor, where he has passed the period of nurture. Schouler's Dom. Rel. 368 ; *Frankfort* v. *New Vineyard*, 48 Me. 565. A residence with another away from and separate from the parents is not emancipation in itself. 3 T. R. 353 ; 3 N. H. 472 ; 5 M. & S. 214 ; 5 B. & A. 523 ; 5 Vt. 481.

No case can be found under any law in any age, where emancipation has been forced upon a minor contrary to the desire of parent and child. That is not the policy of the law. *Wells* v.

*West Haven,* 5 Vt. 322; *Bradford* v. *Lunenburgh,* 5 Vt. 481; *Sherburne* v. *Hartland,* 37 Vt. 528; *Mason* v. *Gustin, Hutchins & Co.,* 32 Vt. 780.

*William E. Johnson,* for defendant.

Did Holt's father acquire a settlement under chap. 19, s. 1, Gen. Sts. ? We claim that he did not; because, 1st, he did not hold " in his own right " within the meaning of the act. He simply had possession on an agreement between him and Abbott. The legal title was in Abbott alone. The most that can be claimed is that Nathan Holt had an interest that perhaps could be enforced in equity. He had no legal title; he did not hold in his own right. He held in the right of Abbott. *Newfane* v. *Somerset,* 49 Vt. 411. Second; because the farm was not set in the list of the town for five years in succession. That supposes that the town had a valid list. But there was no valid list during 1857–8–9. The lists were not sworn to; then there were, in fact, no lists; if no lists, no setting of the farm in the list; and hence no settlement. An infant is emancipated when he contracts a new relation inconsistent with being a part of the family of his father. WILLIAMS, Ch. J., in *Wells* v. *West Haven,* 5 Vt. 326; 37 Vt. 529. Enlisting in the U. S. service is contracting such a new relation as would emancipate the infant. *Baker* v. *Baker,* 41 Vt. 57.

The opinion of the court was delivered by

POWERS, J. Nathan Holt, the father of the pauper, purchased a farm in Landgrove, March 31, 1857, taking a bond conditioned that if he made payment of the purchase-money as it fell due, according to the stipulations of the bond, he should receive a deed. He went into possession of the farm, and the same was set to him in the grand list of the town of Landgrove, for the years 1857–8 –9–60–61–62 and 1863, at more than three dollars.

Our statute, chap. 19, Gen. Sts. sec. 1, sub. div. 4, provides that a legal settlement may be gained in a town, where a person of full age resides in the town, " and whose ratable estate *held in his own right* . . . shall be set in the grand list of such town at the

sum of three dollars or upwards for five years in succession." If Holt, when he purchased his farm, had taken a deed and given back a mortgage to secure the payment of the purchase-money, it could not be denied that he held his estate in his own right. The conveyance which he in fact took is equivalent to the same thing. It is only a difference in the *form* of the conveyance. Holt, holding under his bond, is, to all intents and purposes, predicable of the statute in question, as much the owner of his farm as he would be, if he had a deed of it. So long as he performs the conditions of his bond, Abbott cannot question his title. Abbott would be a trespasser, like a stranger, if he invaded Holt's possession ; and had no more " right " in the farm than a stranger. He had only the rights of a mortgagee before breach of condition.

This farm was held by somebody "in his own right," within the purview of the pauper law ; and that holder was either Holt or Abbott. Did Abbott hold it in his own right ? Clearly not. He did not hold it as an owner ; but for security. Holt held it as his own. Until breach of condition, and possession taken by Abbott, the farm could not be set in the list to Abbott. If real estate is mortgaged, " the mortgagor shall, for all purposes of taxation, be deemed the owner thereof, until the mortgagee shall take possession of the same. Gen. Sts. chap. 83, sec. 9.

But it is urged that the grand list of Landgrove, for the years 1857, 1858 and 1859 was defective ; in fact, was not legal. It was the only list which the town used as the basis of taxation ; if illegal for want of formalities, the town adopted it as authentic, and assessed and collected taxes, treating it as legal. Holt paid his taxes assessed upon this list. Whatever defence the tax-payers may have been able to assert against the collection of their taxes, this grand list was *the* grand list referred to in the pauper law. The town authorities set Holt's name in this list ; assessed his taxes upon it ; and he paid them. Holt could not recover back his taxes so paid ; nor can the town now repudiate the list so acted upon. The grand list referred to in sec. 1, is the list made up by the listers, and adopted by the town for purposes of taxation, whether the same be in all respects legal or not.

Nathan Holt gained a settlement therefore in Landgrove under the section in question ; and the pauper takes derivatively from him.                                                      Judgment affirmed.